UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK

------------------------------------------------ x

NYP Holdings, Inc.,

                Plaintiff,

      - against -

NEW YORK POST PUBLISHING INC.,
STEVEN JUDE HOFFENBERG, and JANE
DOES 1-10,

                Defendants.

------------------------------------------------ x

14 Civ 4 CV - 8310

**COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES**

JUDGE MARRERO



Plaintiff NYP Holdings, Inc. ("NYP Holdings"), by and through its undersigned attorneys

Davis Wright Tremaine LLP, as and for its complaint against Defendants New York Post

Publishing Inc. ("The Corporation"), Steven Jude Hoffenberg ("Hoffenberg"), and Jane Does 1

through 10, alleges as follows:

<u>**NATURE OF THE ACTION**</u>

    1.     This is an action for trademark infringement, trademark dilution, false designation

of origin, unfair competition, and cyberpiracy under the laws of the United States, trademark

dilution under the laws of the State of New York, and common-law trademark infringement and

unfair competition, all arising from Defendants' publication of news content using NYP

Holding's famous, federally-registered NEW YORK POST trademarks, and their registration

use of a domain name containing the words "NEW YORK POST" at

᾿rkpostpublishinginc.com. Defendant Hoffenberg, the publisher for a three-month

ⱽork Post in 1993 before serving sixteen years of a 20-year sentence in federal

has intentionally and unlawfully appropriated the NEW YORK POST

᾿nain www.newyorkpostpublishinginc.com to NYP Holding's

DWT 24928133v5 3930033-000043

Exhibit A    Exhibit B    Exhibit C    Exhibit D    Exhibit E    Exhibit F

irreparable detriment, in violation of federal, state, and common laws governing trademarks and unfair competition.

2.      NYP Holdings publishes the *New York Post*, the oldest, continuously published daily newspaper in the United States, and a recognized New York City institution.

3.      NYP Holdings owns numerous trademark registrations for NEW YORK POST (collectively, the "NEW YORK POST Marks").  As a result of approximately 80 years of extensive, continuous use in the United States by NYP Holdings and its predecessors operating the *New York Post*'s news publishing business, the widely recognized NEW YORK POST Marks have generated valuable goodwill and have become world famous and distinctive.

4.      Defendants are perpetrating a brazen scheme to trade upon the reputation and success of the *Post* name and NEW YORK POST Marks, by using the purported trade name "New York Post Publishing Inc." for their own commercial activities including a website at www.newyorkpostpublishinginc.com that purports to offer news content to the public. Defendants have announced that they intend to publish a competing newspaper under the "New York Post Publishing Inc." name "this October" and to license other newspapers to publish under that name as well.

5.      Defendants' use of the NEW YORK POST Marks and their attempt to free ride on the *New York Post*'s brand image and reputation has irreparably injured and will continue to irreparably injure NYP Holdings unless Defendants are enjoined.

## THE PARTIES

6.      Plaintiff NYP Holdings, Inc. is a corporation organized and existing under the laws of Delaware with its principal place of business at 1211 Avenue of the Americas, New York, New York, 10036-8790.

7.     Defendant New York Post Publishing Inc. is a corporation formed under the laws of the State of Delaware, with its principal place of business at 305 East 40th Street Suite 8A, New York, NY 10016.

8.     Defendant Steven Jude Hoffenberg is an individual who, upon information and belief, following his release from federal prison in 2013, currently resides in New Jersey.  He is the CEO, publisher, and owner of Defendant New York Post Publishing Inc. and controls and directs all of its business operations.

9.     Upon information and belief, Defendants Jane Does 1-10 are individuals or business entities affiliated with Defendant New York Post Publishing Inc. or Defendant Hoffenberg, the identities and residences of which are currently unknown.

## JURISDICTION AND VENUE

10.     This action arises under and pursuant to the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and under the common law of trademark infringement and unfair competition.

11.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) and (b), because it arises under the trademark and unfair competition laws of the United States.  The court has supplemental jurisdiction over Plaintiff's common law claims pursuant to 28 U.S.C. § 1367(a) because these claims are so related to Plaintiff's claims under federal law that they form a part of the same case or controversy and derive from a common nucleus of operative fact.

12.     The Court has personal jurisdiction over Defendants pursuant to Fed. R. Civ. P., Rule 4(k)(1)(A) because Defendants do business in the Southern District of New York.

13.     Venue in this action lies in the Southern District of New York pursuant to 28 U.S.C. § 1391(b) because Defendant New York Post Publishing Inc.'s principal place of

business is in this District, a substantial part of the events giving rise to the claim occurred in this District, and the intellectual property that is the subject of this lawsuit is situated in this District.

## FACTUAL BACKGROUND

**The *New York Post***

14.     The *New York Post* is the oldest, continuously published daily newspaper in the United States, having first been published by Alexander Hamilton in 1801.  Today, the *New York Post* is sold in many states in the United States, both at newsstands and by subscription.

15.     The *New York Post* began publishing news on the web using the NEW YORK POST Marks in 1996 and has done so continuously since then.  The *New York Post*'s website, www.nypost.com ("NYPost.com"), is one of the largest newspaper websites in the United States with approximately 98 million page views per month.  NYPost.com is accessed by users in many countries throughout the world.

16.     The NEW YORK POST trademarks are recognized as representing one of the most famous newspapers in the country.  For consumers, the NEW YORK POST trademarks ultimately bring to mind the *New York Post*, a newspaper and news website dealing with daily issues in a distinctively original manner.

17.     NYP Holdings, the publisher of the *New York Post*, is the sole and exclusive owner of a number of United States registered trademarks, including but not limited to the following (the "NEW YORK POST Marks"):

| TRADEMARK | APP/REG. NO | APP/REG. DATE | GOODS/SERVICES |
|---|---|---|---|
| NEW YORK POST | 1,526,818 | 2/28/89 | Daily newspaper |
| *NEW YORK POST* | 2,213,076 | 12/22/98 | Daily newspaper covering a variety of topics |

| TRADEMARK | APP/REG. NO | APP/REG. DATE | GOODS/SERVICES |
|---|---|---|---|
| NEW YORK POST | 3,639,502 | 6/16/09 | Computer services, namely, providing an online newspaper featuring current local, national and international news and news analysis on a wide variety of topics, photographs, information about a wide variety of topics related to business, sports, gossip, entertainment, celebrities, celebrity life style, travel, fashion and clothing, health, coupons, games, and astrology, accessible via the Internet; publication of a daily electronic newsletter featuring a wide variety of topics related to current local, national and international news, business, sports, gossip, entertainment, travel, fashion, health and local weather, accessible via the Internet |
| NEW YORK POST | 3,652,365 | 7/7/09 | Electronic transmission of newspaper and website content to mobile devices |
| NEW YORK POST | 4,056,288 | 11/15/11 | Downloadable software in the nature of an application for obtaining news, information, commentary, and textual, audio, and visual content of the type found in general interest publications on mobile and stationary consumer electronic devices |
| NEW YORK POST | 3,098,182 | 5/30/06 | Printed non-fiction books on a variety of topics |
| NEW YORK POST | 3,199,514 | 1/16/07 | Tee shirts, sweatshirts |
| NEW YORK POST | 3,199,515 | 1/16/07 | Tee shirts, fashion tops, sweatshirts, and underwear |
| NEW YORK POST | 3,357,150 | 12/18/07 | Mugs made from glass or ceramic |
| NEW YORK POST | 3,319,743 | 10/23/07 | Mugs made from glass or ceramic |

18.     Copies of the Certificates of Registration from the United States Patent and Trademark Office for the NEW YORK POST Marks are annexed hereto as Exhibit A. All of the registrations in Exhibit A are valid, subsisting, unrevoked, and uncancelled.

19.     Both prior to and after these registrations, NYP Holdings and its predecessors have continuously used the NEW YORK POST Marks, or predecessors to those marks, in connection with the *New York Post*'s print and online publishing activities and related merchandise since 1934.

20.     Registrations number 1,526,818, 2,213,076, 3,098,182, 3,199,514, 3,199,515, 3,319,743, and 3,357,150 have become incontestable under 15 U.S.C. §1065. Copies of the Section 15 Declarations for these marks filed with the United States Patent and Trademark Office are annexed hereto as Exhibit B.

21.     These registrations constitute prima facie evidence of the validity of the NEW YORK POST trademarks and conclusive evidence of NYP Holdings' exclusive right to use the NEW YORK POST Marks in commerce in connection with the goods and services designated. Registration of the NEW YORK POST Marks also constitutes constructive notice to Defendants of NYP Holdings' ownership and exclusive rights in the NEW YORK POST Marks.

22.     NYP Holdings also owns common law rights in the NEW YORK POST Marks for use in connection with the provision of news content in print and digital mediums of all kinds, among other things.

23.     NYP Holdings has spent hundreds of millions of dollars producing the *New York Post*, including significant amounts on advertising and promotion of the newspaper, website, and the related NEW YORK POST Marks throughout United States in a variety of media, including television, radio, and print advertisements, and the Internet.

DWT 24928133v5 3930033-000043

24.     Plaintiff sells various promotional items bearing the NEW YORK POST Marks on NYPost.com, including t-shirts, tote bags, umbrellas, and coffee mugs.

25.     As a result of Plaintiff's extensive and exclusive use of the NEW YORK POST Marks and wide-ranging marketing efforts, the NEW YORK POST Marks have come to be widely recognized and relied upon by the trade and the public as identifying the *New York Post*, and as distinguishing it from other publications.   The NEW YORK POST trademarks are famous.  There is no other publication like the *New York Post*.

**Defendants' Infringing Website**

26.     Defendants have used and/or are using NYP Holding's famous, federally-registered NEW YORK POST Marks in interstate commerce in connection with its own purported news services on a website (the "Infringing Website") located at www.newyorkpostpublishinginc.com, which is accessible throughout the United States.

27.     The domain name for the Infringing Website, www.newyorkpostpublishinginc.com (the "Infringing Domain Name"), was registered on September 13, 2014—decades after the NEW YORK POST Marks were first registered and used in interstate commerce.

28.     According to the WHOIS database maintained by DomainTools, LLC at whois.domaintools.com, the owner of record for the above-captioned domain name, as of September 13, 2014, is DOMAIN PRIVACY SERVICE FBO REGISTRANT.  A true and correct copy of the WHOIS record is annexed hereto as Exhibit C.

29.     Upon information and belief, the beneficial owner of the Infringing Website is one or more of Defendants New York Post Publishing Inc., Hoffenberg, and/or one or more of the Defendants Jane Does 1-10.

30.     The Infringing Domain Name registered by Defendants incorporates the NEW YORK POST mark.

31.     The Infringing Domain Name registered by Defendants is identical and/or confusingly similar to the NEW YORK POST Marks.

32.     Upon information and belief, Defendants commenced publishing news stories on the Infringing Website using the NEW YORK POST Marks on or about September 15, 2014.

33.     The Infringing Website's homepage features the mark NEW YORK POST at the very top of the page, functioning as a masthead for the Infringing Website. The words "New York Post" appear in large white block letters over a black background, followed by "Publishing Inc." in smaller, dark purple, script letters:



This presentation clearly uses and emphasizes the mark NEW YORK POST. True and correct copies of representative screenshots of the Infringing Website are annexed as Exhibit D.

34.     Besides using the mark NEW YORK POST prominently at the top of the page, the Infringing Website's homepage has a layout, font style, and overall look-and-feel that resembles the trade dress and visual appearance of NYPost.com's homepage:



True and correct copies of representative screenshots of NYPost.com's homepage are annexed hereto as Exhibit E.

35.     The Infringing Website's home page features current news headlines that link to news content elsewhere on the website; a photo of a *New York Post* cover from 1993 reading "Hoffenberg Saves the Post"; a banner reading "The Future of the New York Post"; a link to a "History of the New York Post"; and a menu of sections including "News," "Entertainment," "Opinions," "Metro," "Fashion," "Sports," and "Liz Smith," a well-known, former gossip columnist for the *New York Post* and now a syndicated columnist.

36.     Like the homepage, the pages for each news story on the Infringing Website have the mark NEW YORK POST emblazoned at the top of the page.  Each of the story pages also includes a photo of a *New York Post* cover from 1993 reading "Hoffenberg Saves the Post" and a link to a "History of the New York Post."  Like the homepage, these pages have a layout, font

style, and overall look-and-feel that resemble the trade dress and visual appearance of pages on NYPost.com. *Compare* Exhibits D and E.

37.     Defendants also operate a related website called "Post All Star News," at http://starstruck.1800gotnerd.com. That website also purports to offer news content, and (like the Infringing Website) displays a photo of a *New York Post* cover from 1993 reading "Hoffenberg Saves the Post," and bears the identification at the bottom:  "Steven J. Hoffenberg, CEO New York Post Publishing Inc. licensed to POSTALLSTARNEWS.COM."

38.     NYP Holdings did not authorize any of Defendants' above-described uses of the NEW YORK POST Marks on the Infringing Website, the "Post All Star News" website, or in the Infringing Domain Name.

39.     Defendants' above-described uses of the NEW YORK POST Marks on the Infringing Website, the "Post All Star News" website, and in the Infringing Domain Name are likely to lead the general public to believe that Defendants' website emanates from, or is sponsored by or affiliated with the *New York Post* and/or NYP Holdings, when in truth and in fact it is not.

**Defendants Have No Rights to the NEW YORK POST Marks**

40.     Defendants have no rights to, or legitimate interest in, the NEW YORK POST Marks, and they have no legitimate basis for incorporating the words "New York Post" into the Disputed Domain name.

41.     Defendant Hoffenberg is attempting to exploit his long-ago, three-month connection with the *New York Post* to his commercial advantage, and to claim a current relationship with the *New York Post* where there is none.

42.     Hoffenberg was the *Post*'s publisher from January to March 1993, and attempted to buy the *New York Post* from its then-owner, Peter Kalikow (who had declared bankruptcy).

Hoffenberg was unable to complete the purchase because the SEC filed a civil suit against him and his company Towers Financial Corporation, which resulted in the freezing of Towers' assets. Instead, another investor, Abraham Hirschfeld, briefly took over management of the *Post*, which was ultimately transferred in October 1993 to its current owner, NYP Holdings.  Annexed as Exhibit F are true and correct copies of news articles discussing Defendant Hoffenberg's short-term involvement with the *Post* in 1993.

43.     On February 2, 1993, during his brief involvement with the *Post* and for unknown reasons, Hoffenberg formed a Delaware corporation, New York Post Publishing Inc. (the "Corporation").  Copies of documents relating to the Corporation on file with the Delaware Secretary of State are annexed hereto as Exhibit G.

44.     Hoffenberg never had the right to use a business name that incorporated "NEW YORK POST" or to use that mark on goods or services in commerce because he never acquired the *New York Post*, or its trademark.  In any event, any such right would have terminated when Hoffenberg's three-month relationship with the *New York Post* ended in March 1993.

45.     According to public records, On March 1, 1995, the Delaware Secretary of State voided the Corporation's Certificate of Incorporation under Delaware Corporation Law § 502, apparently for failure to file its annual franchise tax report and pay the franchise tax due.  *See* Exhibit G.

46.     In 1997, Mr. Hoffenberg was sentenced to 20 years in prison for defrauding the investors in Towers.  Mr. Hoffenberg was also ordered to pay $476 million in restitution to the investors.  Mr. Hoffenberg was released from prison in or around 2013.  Copies of news articles discussing these events are annexed hereto as Exhibit H.

DWT 24928133v5 3930033-000043

47.    After his release from prison, Defendant Hoffenberg filed a Certificate of Renewal with the Delaware Secretary of State on June 12, 2014 to bring the defunct Corporation back into good standing in order to further his scheme of creating a news website and newspaper that compete directly with the *New York Post*.

48.    Upon information and belief, the Corporation never offered or sold goods or services in commerce under any trademark or service mark at any time between the Corporation's formation in 1993 and the launch of the Infringing Website in September 2014. The Corporation did not exist between March 1, 1995, when the Delaware Secretary of State voided its Certificate of Incorporation, and June 12, 2014, when Hoffenberg filed the Certificate of Renewal.

**Defendants Have Deliberately Misled the Public About**
**Hoffenberg's Relationship with the *New York Post* and Refused to Cease and Desist**

49.    On June 16, 2014, a lawyer named Anthony J. Piacentini contacted in-house counsel for NYP Holdings by telephone, purporting to represent Hoffenberg.  Mr. Piacentini informed in-house counsel that Hoffenberg was planning to use the name New York Post Publishing Inc. and that Mr. Piacentini was authorized to accept service in the event that NYP Holdings sued Hoffenberg for using this name.

50.    On June 24, 2014, in-house counsel for NYP Holdings wrote a letter to Mr. Piacentini, copying Hoffenberg, warning them that Hoffenberg had no rights in the *Post*'s name or trademarks and that "any imaginable use in commerce [of the New York Post Publishing Inc. name] would infringe NYP Holdings' intellectual property rights, and NYP Holdings will not hesitate to take legal action against your client to defend its rights."  A copy of the letter is annexed hereto as Exhibit I.

51.     In-house counsel for NYP Holdings received a response from Mr. Piacentini on June 24, 2014, which stated: "Pleased be herein advised, specifically in connection with the contents of your letter dated June 20, 2014, that I am not representing Mr. Steven Hoffenberg or his corporation, New York Post Publishing Incorporated.   Therefore, any and all service of process, or any correspondence or legal documents you may generate on behalf of your client, must be served on Mr. Steven [sic]."   A true and correct copy of the letter is annexed hereto as Exhibit J.

52.     In-house counsel for NYP Holdings then re-sent a copy of the letter to Hoffenberg and spoke with Hoffenberg on the telephone on the afternoon of June 24, 2014.   Counsel reiterated NYP Holdings' demand that Hoffenberg cease and desist from any use of the New York Post Publishing Inc. name.

53.     Upon information and belief, on August 25, 2014, one or more of the Defendants issued a press release titled "Business Man Steven J. Hoffenberg to Once Again Publish the New York Post Publishing Inc."   (the "August 25 Press Release").   A copy of the press release is annexed as Exhibit K.

54.     The August 25 Press Release states repeatedly that Defendant Hoffenberg will "**once again** publish the New York Post Publishing Inc." (emphasis added)   This statement conveys a misleading impression about Hoffenberg's relationship with the *New York Post*.

55.     Upon information and belief, before August 25, 2014, neither Hoffenberg nor the Corporation had previously published any publication called "New York Post Publishing Inc."

56.     Because Hoffenberg was briefly the publisher of the *New York Post*, the statement that he is "once again" publishing the "New York Post Publishing Inc." creates the misleading impression that Hoffenberg is "once again" the publisher of the *New York Post*.   Upon

information and belief, Defendants intended to convey this false and misleading impression and did so in order to sow confusion about the relationship between Hoffenberg and the *New York Post*.

57.     The August 25 Press release then exacerbates this misleading impression by stating: "Although he has spent a number of years away from the newspaper, his return is a welcomed one by many vital persons involved with NewsCorp." This statement conveys the impression that Hoffenberg has returned to "the newspaper," meaning the *New York Post*, with the blessing of News Corporation, all of which is patently false. Upon information and belief, Defendants intended to convey this false and misleading impression and did so in order to sow confusion about the relationship between Hoffenberg and the *New York Post*.

58.     On September 16, 2014, NYP Holdings discovered that, despite its cease and desist letter to Hoffenberg and Piacentini in June 2014, Defendants had launched the Infringing Website.

59.     On September 17, 2014, NYP Holdings sent a letter to the Infringing Website's hosting service and domain registrar demanding that it withdraw its services from the Infringing Website. A copy of that letter with exhibits is annexed hereto as Exhibit L. The hosting service and registrar temporarily disabled the Infringing Website and Infringing Domain Name, but Defendants were able to get the website reactivated, and the website remains active and will continue to be active unless Defendants are enjoined.

60.     Despite notice and knowledge of their ongoing infringement, Defendants willfully and defiantly persist in infringing the NEW YORK POST Marks and using the Infringing Domain Name. Defendants continue to falsely assert their claim of rights to the NEW YORK

POST Marks and have threatened NYP Holdings and its counsel with legal action should it try to enforce its valuable trademark rights.

61.     On or about October 6, 2014, Defendants announced that they intend to publish a competing newspaper under the "NEW YORK POST PUBLISHING INC." name "this October." Defendants also announced that they plan to "partner[] with other free newspapers, licensing them the New York Post Publishing Inc title." A true and correct copy of the webpage is annexed as Exhibit M.

62.     Defendants' continuing conduct constitutes an ongoing threat to Plaintiff. Plaintiff has sustained and will continue to sustain irreparable injury, including injury to its reputation and goodwill, as a direct result of Defendants' conduct. This injury is not wholly compensable by an award of monetary damages. Unless Defendants are restrained and enjoined from engaging in their ongoing infringing, dilutive, and deceptive conduct, Plaintiff will continue to suffer irreparable injury.

**Defendants' Bad Faith Intent to Profit from the Infringing Domain Name**

63.     Defendants have registered and are using the Infringing Domain Name with bad-faith intent to profit by trading off the reputation and goodwill associated with the *New York Post*.

64.     At the time they registered the Infringing Domain Name and began operating the Infringing Website, Defendants had actual knowledge of the NEW YORK POST Marks based on (1) NYP Holdings' extensive and widespread use of the famous NEW YORK POST Marks in commerce; (2) Hoffenberg's personal involvement with the *New York Post* in 1993; and (3) *New York Post*'s cease and desist letter of June 2014.

65.     At the time they registered the Disputed Domain name and began operating the Infringing Website, Defendants had no legitimate grounds to claim rights to the NEW YORK POST Marks:

- Defendant Hoffenberg never owned the *New York Post*.

- Hoffenberg registered a corporation using the name "New York Post Publishing Inc." in 1993, but that company never had ownership of or rights to use the NEW YORK POST Marks.

- The corporation was completely dormant for 19 years starting in 1995. It never sold goods or services and never published a "newspaper," as falsely suggested in the August 25 Press Release.

66.     Defendants knew these facts in September 2014 when the registered the Infringing Domain Name and commenced publishing on the Infringing Website.

67.     Despite this knowledge, Defendants have falsely claimed ownership of the NEW YORK POST Marks to generate publicity for their competing business enterprise by picking a high-profile legal fight with the *New York Post* without legal basis to do so.

68.     In an attempt to sow confusion in the minds of the public, the Infringing Website states: "All of the assets inclusive of the trademarks and the website, New York Post, which receives 78 million hits per day, are rightfully owned by Steven Hoffenberg and TowersInvestors.com, not Rupert Murdoch." A true and correct copy of the webpage is annexed as Exhibit N. There is no basis for the false statement that anyone other than NYP Holdings owns the *New York Post*, NYPost.com, and the NEW YORK POST Marks.

69.     Defendants use the Infringing Domain Name and Infringing Website and the NEW YORK POST Marks to profit from advertising revenue by deliberately playing off

consumer and advertiser confusion about the source, sponsorship, affiliation, or endorsement of the Infringing Website.

70.     The Infringing Website currently features commercial advertising for the Angus Club Steakhouse and Pazzo Pizza (both located in Manhattan); the Pocono Mountains Film Festival; and Cutex Nail Polish Remover.  Upon information and belief, these advertisers are either confused as the Infringing Website's affiliation with the *New York Post* or are willing to capitalize on consumer confusion regarding the Infringing Website's affiliation with the *New York Post*.

71.     The Infringing Website also features ads for business that that, upon information and belief, are affiliated with Hoffenberg, including Christ Couture and towersinvestors.com. Exhibit D.

72.     Upon information and belief, Defendants intend to garner publicity for these and other Hoffenberg enterprises by falsely claiming ownership of the NEW YORK POST Marks and picking a high-profile legal fight with the *New York Post* without legal basis to do so.

73.     Since June 2014, Hoffenberg has displayed his guilty knowledge by repeatedly challenging NYP Holdings to file suit against him and inviting counsel to serve process on him.

74.     Defendants registered the Infringing Domain Name using the privacy service Domain Privacy Service, a service typically used with the intent to hide one's identity.

**Irreparable Injury to NYP and the *New York Post***

75.     As a news organization, the *New York Post* depends on its reputation for quality journalism.  Defendant's use of the NEW YORK POST Marks on the Infringing Website, in the Infringing Domain Name, and elsewhere continues to irreparably harm the *New York Post*'s reputation with the reading public and deprive it of customer goodwill.

76.     By using the NEW YORK POST Marks on the Infringing Website, Defendants wrongfully associate the *New York Post* with the Infringing Website's poor-quality news content. Many of the news stories on the Infringing Website are short and poorly written stories that appear to be hasty rewrites that are blatantly derivative of content from other news outlets like CNN and the Associated Press.  While the Infringing Website also purports to contain syndicated content from the Tribune Content Agency, the Infringing Website's stories possess none of the original reporting, local color, and style that readers have come to associate with the *New York Post*.  *See* Exhibit D.  The Infringing Website also contains a questionable offer, from a man who owes millions in restitution, to pay "up to one million dollars" to readers who send in "stories about great scandals."  *See* Exhibit O.  Even if the Infringing Website were publishing high-quality content, the injury to the *New York Post* brand from consumer confusion would be significant and irreparable.  Linking the *New York Post* to such inferior and poorly conceived content magnifies the irreparable harm.

77.     Defendants' plan to publish a competing newspaper using the NEW YORK POST Marks "this October" will greatly exacerbate the irreparable harm already being suffered by NYP Holdings, further depriving it of control over the *New York Post* brand and reputation.

78.     By using the NEW YORK POST Mark on the Infringing Website, Defendants wrongfully associate the *New York Post* with Defendant Hoffenberg's criminal history, lengthy time in jail, and ongoing efforts to pay back defrauded investors.  For example, the August 25 Press Release, after falsely stating that he is "once again" publishing the "New York Post Publishing Inc.," goes on: "Hoffenberg has committed himself and is driven to pay restitution of over $700 million to the 200,000 victims in the TowersInvestors.com fraud."

## AS AND FOR A FIRST CLAIM FOR RELIEF
### (Trademark Infringement Under Section 32(a) of the Lanham Act)

79.     Plaintiff repeats and realleges paragraphs 1 through and including 78 as if the same were fully set forth herein.

80.     NYP Holdings owns valid and protectable federally registered trademarks for NEW YORK POST, Trademark Registrations No. 1,526,818, 2,213,076, 3,199,514, 3,199,515, 3,357,150, 3,319,743, 3,652,365, 3,639,502, and 4,056,288.

81.     The NEW YORK POST Marks have acquired secondary meaning.

82.     Defendants are using in commerce in connection with services a mark that is confusingly similar in sound, appearance, and meaning to NYP Holdings' federally-registered NEW YORK POST Marks.

83.     The services offered by Defendants are competitive with and/or directly related to goods and services offered by NYP Holdings under its NEW YORK POST Marks, including a news website.  Defendants have also announced plans to publish newspapers in New York, which would compete with the daily newspaper published in New York by NYP Holdings.

84.     Defendants' actions as alleged herein are likely to cause confusion or mistake or to deceive as to the origin, sponsorship, or approval of Defendants' services, and thus constitute infringement of NYP Holdings' federally-registered trademark in violation of Section 32(a) of the Lanham Act, 15 U.S.C. § 1114(1)(a).

85.     Defendants have acted and/or continue to act intentionally, willfully, and with full knowledge of NYP Holdings' rights.  This case is exceptional within the meaning of 15 U.S.C. § 1117.

86.     As a direct and proximate result of Defendants' intentional acts as alleged herein, Plaintiff has been injured and/or will continue to be injured, in an amount presently unknown and to be determined at the time of trial.

87.     Plaintiff is entitled to a preliminary and a permanent injunction because the injury that Plaintiff has suffered, are suffering, and/or will continue to suffer unless Defendants' acts of infringement are enjoined as requested herein is irreparable; Plaintiff has no adequate remedy at law; considering the balance of hardships between Plaintiff and Defendants, a remedy in equity is warranted; and the public interest would not be disserved by a permanent injunction.

88.     Defendants are liable to Plaintiff for all profits and damages resulting from their infringing activities as well as additional penalties and costs for this willful and deliberate infringement pursuant to 15 U.S.C. § 1117.

## AS AND FOR A SECOND CLAIM FOR RELIEF
### (Trademark Infringement, False Designation of Origin, and Unfair Competition Under Section 43(a) of the Lanham Act)

89.     Plaintiff repeats and realleges paragraphs 1 through and including 88 as if the same were fully set forth herein.

90.     The NEW YORK POST Marks have acquired secondary meaning.

91.     Defendants' actions as alleged herein are likely to confuse consumers as to the origin, sponsorship, or approval of Defendants' services and commercial activities, and the affiliation, connection, or association between Defendants' and Plaintiff's services, and thus constitute trademark infringement, false designation of origin, and unfair competition with respect to the NEW YORK POST Marks in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

92.     As a direct and proximate result of Defendants' intentional acts as alleged herein, Plaintiff has been injured and/or will continue to be injured, in an amount presently unknown and to be determined at the time of trial.

93.     Defendants acted and/or continue to act intentionally, willfully, and with full knowledge of NYP Holdings' rights.  This case is exceptional within the meaning of 15 U.S.C. § 1117.

94.     Plaintiff is entitled to a preliminary and a permanent injunction because the injury that Plaintiff has suffered, is suffering, and/or will continue to suffer unless Defendants' acts of infringement are enjoined as requested herein is irreparable; Plaintiff has no adequate remedy at law; considering the balance of hardships between Plaintiff and Defendants, a remedy in equity is warranted; and the public interest would not be disserved by a permanent injunction.

95.     Defendants' are also liable to Plaintiff for all profits and damages resulting from their violation of 15 U.S.C. § 1125(a), as well as additional penalties and costs for such willful and deliberate violations pursuant to 15 U.S.C. § 1117.

**AS AND FOR A THIRD CLAIM FOR RELIEF**
**(Trademark Dilution Under Section 43(c) of the Lanham Act)**

96.     Plaintiff repeats and realleges paragraphs 1 through and including 95 as if the same were fully set forth herein.

97.     Defendants' actions as alleged herein constitute trademark dilution under the Lanham Act, 15 U.S.C. § 1125(c).

98.     NYP Holdings' NEW YORK POST Marks have become distinctive and famous as the result of many years of nationwide use and promotion of the marks by Plaintiff.

99.     Defendants' first use of the "New York Post Publishing Inc." name, mark, and domain name in interstate commerce occurred many years after the NEW YORK POST Marks had become famous.

100.    Defendants' unauthorized use of the NEW YORK POST Marks in interstate commerce in the sale, advertising, and promotion of goods and/or services dilutes by blurring the distinctiveness, strength and value of Plaintiff's famous marks.

101.    The use of the NEW YORK POST Marks in interstate commerce by Defendants (one of whom is a convicted fraudster who pleaded guilty to multiple felonies) for a low-quality purported "news" site featuring rewritten news stories and syndicated content, dilutes by tarnishment the distinctiveness, strength and value of Plaintiff's famous marks.

102.    Defendants' unauthorized use of the "New York Post Publishing Inc." name, mark, and domain name in commerce, as alleged herein, with knowledge of Plaintiff's famous mark constitutes a willful intent to cause dilution of the famous marks in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

103.    As a direct and proximate result of Defendants' intentional acts as alleged herein, Plaintiff has been injured and/or will continue to be injured, in an amount presently unknown and to be determined at the time of trial.

104.    Plaintiff is entitled to a preliminary and a permanent injunction restraining further acts of dilution, because the injury that Plaintiff has suffered, is suffering, and/or will continue to suffer unless Defendants' acts of infringement are enjoined as requested herein, is irreparable; Plaintiff has no adequate remedy at law; considering the balance of hardships between Plaintiff and Defendants, a remedy in equity is warranted; and the public interest would not be disserved by a permanent injunction.

105.     Defendant is also liable to Plaintiff for all profits and damages resulting from their activities, as well as additional penalties and costs for the willful and deliberate violation of 15 U.S.C. § 1125(c), as well as additional penalties and costs for such willful and deliberate violations pursuant to  15 U.S.C. § 1117.

**AS AND FOR A FOURTH CLAIM FOR RELIEF**
**(Trademark Cyberpiracy Under Section 43(d) of the Lanham Act)**

106.     Plaintiff repeats and realleges paragraphs 1 through and including 105 as if the same were fully set forth herein.

107.     Defendants' actions as alleged herein constitute cyberpiracy under the Lanham Act, 15 U.S.C. § 1125(d).

108.     Defendants registered and are using a domain name that is confusingly similar to NYP Holdings' NEW YORK POST Marks and that incorporates the NEW YORK POST Marks in their entirety.

109.     The NEW YORK POST Marks have acquired secondary meaning and are distinctive, and were distinctive and/or famous at the time Defendants registered the Infringing Domain Name.

110.     Defendants' registration and use of the Infringing Domain Name are likely to cause consumers to believe erroneously that Defendants' website is sponsored, approved, or endorsed by, or otherwise affiliated with, NYP Holdings and/or the *New York Post*.

111.     Defendants possess the bad faith intent to profit from the public's association of the NEW YORK POST Marks with the *New York Post*.  Defendants' bad faith intent is evidenced by their lack of rights in the marks at issue; their lack of use of the marks in any bona fide offering of goods and services over the last twenty years; their admitted intent to use the

DWT 24928133v5 3930033-000043

marks to compete with the *New York Post*; and their registration of a domain name that they know is confusingly similar to the NEW YORK POST Marks.

112.    As a direct and proximate result of Defendants' intentional acts as alleged herein, Plaintiff has been injured and/or will continue to be injured, in an amount presently unknown and to be determined at the time of trial.

113.    Defendants have acted and/or continue to act intentionally, willfully, and with full knowledge of NYP Holdings' rights.  This case is exceptional within the meaning of 15 U.S.C. § 1117.

114.    Plaintiff is entitled to a preliminary and a permanent injunction restraining further acts of cyberpiracy and transferring the Infringing Domain Name to Plaintiff, because the injury that Plaintiff has suffered, is suffering, and/or will continue to suffer unless Defendants' acts of infringement are enjoined as requested herein is irreparable; Plaintiff has no adequate remedy at law; considering the balance of hardships between Plaintiff and Defendants, a remedy in equity is warranted; and the public interest would not be disserved by a permanent injunction.

115.    Defendants' are also liable to Plaintiff for all profits and damages resulting from their violation of 15 U.S.C. § 1125(d), as well as additional penalties and costs for such willful and deliberate violations pursuant to 15 U.S.C. § 1117.

## AS AND FOR A FOURTH CLAIM FOR RELIEF
### (Common Law Trademark Infringement and Unfair Competition)

116.    Plaintiff repeats and realleges paragraphs 1 through and including 115 as if the same were fully set forth herein.

117.    Defendants' actions as alleged herein constitute common law trademark infringement and common law unfair competition.

118.    Defendants' actions as alleged herein are likely to cause confusion and deception in the consuming public and have caused and are likely to cause NYP Holdings actual injury or damage.

119.    The NEW YORK POST Marks have acquired secondary meaning.

120.    Defendants have used and/or continue to use in commerce marks that are confusingly similar in sound, appearance, and meaning to the NEW YORK POST Marks, notwithstanding the fact that each of them knew that NYP Holdings is the rightful owner of those marks, in order to trade upon and profit from NYP Holdings' reputation and goodwill associated with the NEW YORK POST Marks.

121.    Defendants have made false statements on their website and in press releases regarding the ownership of the NEW YORK POST Marks.

122.    As a direct and proximate result of Defendants' intentional acts as alleged herein, Plaintiff has been injured and/or will continue to be injured, in an amount presently unknown and to be determined at the time of trial.

123.    Defendants have acted and/or are acting with predatory intent and in bad faith.

124.    Plaintiff is entitled to a preliminary and a permanent injunction because the injury that Plaintiff has suffered, is suffering, and/or will continue to suffer unless Defendants' acts of infringement are enjoined as requested herein is irreparable; Plaintiff has no adequate remedy at law; considering the balance of hardships between Plaintiff and Defendants, a remedy in equity is warranted; and the public interest would not be disserved by a permanent injunction.

125.    Plaintiff is also entitled to an award of actual damages in an amount presently unknown and to disgorgement of Defendants' infringing profits.

126.    Plaintiff seeks punitive damages for Defendants' gross, wanton, and willful fraud and morally culpable conduct.

## AS AND FOR A FIFTH CLAIM FOR RELIEF
### (Trademark Dilution Under N.Y. Gen. Bus. Law 360-l)

127.    Plaintiff repeats and realleges paragraphs 1 through and including 126 as if the same were fully set forth herein.

128.    Defendants' actions as alleged herein constitute trademark dilution in violation of N.Y. Gen. Bus. Law § 360-l.

129.    The NEW YORK POST Marks are well known and distinctive as indicators of source for NYP Holdings and the *New York Post* newspaper and website.

130.    Defendants' use of the NEW YORK POST Marks on their website and for their proposed print newspaper is likely to and actually dilutes and blurs the distinctiveness of NYP Holdings' NEW YORK POST Marks.

131.    Defendants' false statements on their website are likely to and actually dilute and tarnish the NEW YORK POST Marks.

132.    As a direct and proximate result of Defendants' intentional acts as alleged herein, Plaintiff has been injured and/or will continue to be injured, in an amount presently unknown and to be determined at time of trial.

133.    Plaintiff is entitled to a preliminary and a permanent injunction because the injury that Plaintiff has suffered, is suffering, and/or will continue to suffer unless Defendants' acts of infringement are enjoined as requested herein is irreparable; Plaintiff has no adequate remedy at law; considering the balance of hardships between Plaintiff and Defendants, a remedy in equity is warranted; and the public interest would not be disserved by a permanent injunction.

134.   Plaintiff is also entitled to an award of actual damages in an amount presently unknown and to disgorgement of Defendants' infringing profits.

135.   Plaintiff seeks punitive damages for Defendants' gross, wanton, and willful fraud and morally culpable conduct.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that this Court enter judgment as follows:

1.   Preliminarily and permanently enjoining Defendants and all those acting at their direction or pursuant to their control from:

    a.   Using any trademark, including but not limited to "NEW YORK POST PUBLISHING INC.," that is likely to be confusingly similar to, or dilutive of, any of the NEW YORK POST Marks, in a way that is likely to have an impact on interstate commerce;

    b.   Inducing, encouraging, causing, facilitating, materially contributing to, or receiving a direct financial benefit from, the use, reproduction, posting, and display of any trademark, including but not limited to "NEW YORK POST PUBLISHING INC.," that is likely to be confusingly similar to, or dilutive of, any of Plaintiff's trademarks or service marks, in a way that is likely to have an impact on interstate commerce, by others in the United States;

    c.   Registering, applying to register, or maintaining a registration for the "NEWYORKPOSTPUBLISHINGINC" domain name, or any domain name relating to, containing, or suggesting Plaintiff's trademarks or service marks;

d.     Using the "NEWYORKPOSTPUBLISHINGINC" domain name, or any domain name relating to, containing, or suggesting Plaintiff's trademarks or service marks;

e.     Representing, by any means whatsoever, that any services offered, advertised, promoted, marketed, or sold by Defendants are offered by or affiliated with *The New York Post*;

f.     Doing any other act or thing calculated or likely to cause confusion or mistake in the minds of the public or prospective consumers of *The New York Post*'s goods or services as to the source of Defendants' goods or services; or

g.     Otherwise unfairly competing with NYP Holdings.

2.     Directing Defendants to relinquish and convey to NYP Holdings the registration for the domain name "newyorkpublishinginc.com" and to be limited to use of a domain name or names that do not use the NEW YORK POST Marks, any colorable imitation of such trademarks, or anything or mark confusingly similar thereto or likely to cause confusion, dilution, or injury to NYP Holdings' business reputation;

3.     Directing Defendants to remove any social media account, username, nickname, or handle containing the words "New York Post", or to rename such account, username, nickname, or handle to remove the words "New York Post";

4.     Directing Defendants to take affirmative steps to dispel the false impressions that have been heretofore created by the use of marks and domain names confusingly similar to the NEW YORK POST Marks;

5.     Awarding damages to Plaintiff in an amount to be ascertained at time of trial;

6.      Ordering Defendants to account and pay to Plaintiff all profits and advantages gained from Defendants' wrongful acts, and, in accordance with such accounting, award NYP Holdings three times such profits or three times NYP Holdings' damages (whichever is greater), pursuant to 15 U.S.C. § 1117;

7.      Awarding statutory damages to Plaintiff pursuant to 15 U.S.C. § 1117(d);

8.      Awarding punitive damages to Plaintiff for Defendants' acts of common law trademark infringement and common law unfair competition;

9.      Awarding to Plaintiff its reasonable attorneys' fees and disbursements in this action, pursuant to 15 U.S.C. § 1117; and

10.     Granting Plaintiff such other and further relief as to this Court shall seem just and proper.

Dated: New York, New York
       October 16, 2014

                              Respectfully submitted,

                              DAVIS WRIGHT TREMAINE LLP

                              By: _____
                              Laura R. Handman
                              Samuel M. Bayard
                              Camille Calman

                              *Attorneys for NYP Holdings, Inc.*
                              1633 Broadway 27th floor
                              New York, New York 10019
                              (212) 489-8230

DWT 24928133v5 3930033-000043