UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK

---------------------------------------------------------------x
NYP Holdings, Inc., :
: 14 Civ. 8310 (VM)
                Plaintiff, :
:
      - against - :
:
NEW YORK POST PUBLISHING INC., :
STEVEN JUDE HOFFENBERG, and JANE :
DOES 1-10, :
:
                Defendants. :
---------------------------------------------------------------x



# PLAINTIFF'S REPLY MEMORANDUM OF LAW
# IN FURTHER SUPPORT OF ORDER TO SHOW CAUSE FOR
# PRELIMINARY INJUNCTION AND EXPEDITED PROCEEDINGS



**DAVIS WRIGHT TREMAINE LLP**
**1633 Broadway**
**New York, New York 10019**
**(212) 489-8230**

*Attorneys for NYP Holdings, Inc.*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................ 1

    I.    HOFFENBERG PRESENTS NO EVIDENCE THAT HE OWNS THE NEW YORK POST MARKS ................................................................................. 2

    II.    HOFFENBERG'S CLAIM OF TRADEMARK OWNERSHIP ALSO FAILS BECAUSE HE DID NOT USE THE MARKS IN COMMERCE UNTIL SEPTEMBER 2014 ............................................................................................. 6

    III.    HOFFENBERG'S RESPONSE DOES NOT DISPUTE THE LIKELIHOOD OF CONFUSION OR IRREPARABLE HARM .................................................. 8

    IV.    HOFFENBERG'S MOTION FOR AN EXTENSION OF TIME ON BEHALF OF THE UNITED STATES ATTORNEY HAS NO BASIS IN LAW OR FACT AND SHOULD BE DENIED ...................................................... 9

CONCLUSION ............................................................................................................................ 9

DWT 25128142v3 3930033-000043

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bell v. S. Bay European Corp.*,
　486 F.Supp.2d 257 (S.D.N.Y. 2007) ..................................................................................... 1

*De Beers LV Trademark Ltd. v. DeBeers Diamond Syndicate Inc.*,
　440 F. Supp. 2d 249 (S.D.N.Y. 2006) ........................................................................... 7, 8, 9

*G's Bottoms Up Social Club v. F.P.M. Indus.*,
　574 F. Supp. 1490 (S.D.N.Y. 1983) ..................................................................................... 7

*Grace v. Bank Leumi Trust Co. of N.Y.*,
　443 F.3d 180 (2d Cir. 2006) ................................................................................................. 1

*Reconstruction Finance Corp. v. J.G. Menihan Corp.*,
　28 F. Supp. 920 (W.D.N.Y. 1939) .................................................................................... 6, 7

*Tecnimed SRL v. Kidz-Med, Inc.*,
　763 F. Supp. 2d 395 (S.D.N.Y. 2011) ................................................................................... 7

*United States v. Hoffenberg*,
　94 Cr. 213, 1997 WL 96563 (S.D.N.Y. March 5, 1997) .............................................. 2, 3, 5

**Statutes**

15 U.S.C. § 1115 ........................................................................................................................... 2

18 U.S.C. §§ 3663 ......................................................................................................................... 9

18 U.S.C. §§ 3663A ...................................................................................................................... 9

18 U.S.C. §§ 3664 ......................................................................................................................... 9

**Other Authorities**

3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* §
　18.15 (4th ed. 2014) .............................................................................................................. 6

**PRELIMINARY STATEMENT**

Straightforward trademark analysis governs the outcome of this case. NYP Holdings owns the NEW YORK POST Marks and has been using them in the news publishing business for decades. Defendants recently launched a competing news website and plan to offer a print newspaper under the name "New York Post Publishing Inc." The likelihood of confusion is plain: Defendants use a purported mark that wholly incorporates NEW YORK POST on identical goods and services and intentionally sow further confusion by falsely claiming that Hoffenberg—rather than NYP Holdings—owns the trademarks in question. Defendants' infringement threatens to irreparably harm NYP Holdings by depriving it of control over its own brand and damaging the *New York Post*'s reputation and goodwill with the reading public.

Defendant Hoffenberg's response includes a great deal of bluster, but does not change the analysis.[1] Hoffenberg presents no competent evidence that he owns the NEW YORK POST Marks, and he fails to outline a coherent theory of how he purportedly obtained those rights. His conclusory claims of ownership are not sufficient to overcome NYP Holdings' undisputed documentary evidence of ownership and the presumption of validity and ownership accorded to NYP Holdings' registered marks, many now incontestable. Moreover, even if Hoffenberg had acquired some ownership interest in the NEW YORK POST Marks in 1993—which he did not— his failure to use the marks in commerce until September 2014 is dispositive. Trademark rights derive from use in commerce, not from incorporating under a business name or obtaining a contractual right unaccompanied by bona fide use. Finally, Hoffenberg does not dispute other key elements of the case, including likelihood of confusion and irreparable harm, and his

---

[1] Defendant New York Post Publishing Inc. filed no response papers. "It is settled law that a corporation may not appear in a lawsuit . . . except through an attorney." *Grace v. Bank Leumi Trust Co. of N.Y.*, 443 F.3d 180, 192 (2d Cir. 2006) (internal quotation marks omitted); *see also Bell v. S. Bay European Corp.*, 486 F.Supp.2d 257, 260 (S.D.N.Y. 2007) (a "lay person may not represent an entity").

response vividly illustrates why both NYP Holdings and the reading public will be harmed unless Defendants' unlawful activity is immediately enjoined.

**I.**

**HOFFENBERG PRESENTS NO EVIDENCE
THAT HE OWNS THE NEW YORK POST MARKS**

NYP Holdings demonstrated in its opening brief and supporting affidavits that it owns all right, title, and interest in and to the NEW YORK POST Marks, which are the subject of multiple federal registrations.[2] Hoffenberg's response falsely proclaims in hyperbolic and conclusory fashion that he owns the trademarks at issue in this case, but he provides neither a coherent explanation nor a shred of documentary evidence to support his grandiose claim.[3] His bald assertions are insufficient to overcome the presumption of validity and ownership that attaches to NYP Holdings' trademark registrations, many of which are incontestable.[4]

Hoffenberg accuses NYP Holdings of ignoring the 1993 New York Post Co., Inc. ("New York Post Co.") bankruptcy proceeding,[5] but he does not explain how he supposedly obtained rights to the NEW YORK POST Marks in that proceeding.[6] Nor does he produce any bankruptcy order or other document conveying any rights to him. Hoffenberg's unsworn Exhibit 1 states that "Towers Financial Corp. acquired a lien on all the assets [of the newspaper]

---

[2] Gavenchak Decl. ¶¶ 6-9, Exs. A, B.
[3] Hoffenberg's response here is tragically reminiscent of Judge Sweet's observation when he imposed sentence in 1997: "Here, an unstable individual with manic tendencies and a sense of grandiosity violated the law in order to satisfy his own greed and sense of entitlement." *United States v. Hoffenberg*, 94 Cr. 213, 1997 WL 96563, at *14 (S.D.N.Y. March 5, 1997), attached as Exhibit A to the Declaration of Samuel M. Bayard ("Bayard Decl.").
[4] 15 U.S.C. § 1115(a), (b).
[5] *See, e.g.*, Hoffenberg Response ¶¶ 4-6, 17, 22, 24, 28-29 (Dkt. 11).
[6] As Judge Sweet succinctly summarized the chaotic times in 1993:
> In early 1993, as the SEC investigation neared completion, Hoffenberg attempted to purchase the then-failing New York Post. Hoffenberg lost control of the paper after running it for less than two months. After the SEC filed a civil action against Hoffenberg and Towers, Towers assets were frozen, and Towers declared bankruptcy, the Bankruptcy Court ruled that Hoffenberg's former partner [Abe Hirschfeld] was in a better financial position than Hoffenberg to run the New York Post. Thereafter, Hoffenberg started a new publication, Her New York, which began as a daily newspaper, cut back to a weekly, then closed its doors.

*Hoffenberg*, 1997 WL 96563, at *10; Bayard Decl., Ex. A.

2

worth approximately $100 million, the only exception being the brick-and-mortar real estate."[7] But he presents no documentary evidence substantiating that lien or an underlying security agreement, no evidence showing a default by anyone, and no evidence of action by Towers Financial to foreclose on or otherwise enforce the purported lien. In addition, Hoffenberg provides no evidence that he (or Defendant New York Post Publishing Inc.) acquired whatever rights Towers Financial might have had, or that any such rights survived the Towers Financial bankruptcy in 1993, which was precipitated by Hoffenberg's own fraud.[8]

Furthermore, Hoffenberg acknowledges that NYP Holdings purchased the *New York Post* in the course of the bankruptcy proceeding.[9] On September 14, 1993, NYP Holdings and New York Post Co. entered into the Amended Asset Purchase Agreement (the "Agreement"), in which NYP Holdings purchased the assets of the *New York Post*, subject to the approval of the bankruptcy court.[10] In the Agreement, New York Post Co. conveyed to NYP Holdings the newspapers' assets "free and clear of any and all liens, claims, charges, encumbrances, mortgages, pledges, security interests and other interests (collectively "Liens")."[11] Those assets included the *Post*'s goodwill and "all United States and foreign trademarks, service marks, imprints, logos, trade dress, corporate, trade, assumed and other names, including those at common law, and all registrations and applications to register the foregoing."[12] The Agreement excludes "any debt owed to Towers Financial Corporation" from the "Assumed Liabilities"

---

[7] Hoffenberg Response Ex. 1, at 3.
[8] *See Hoffenberg*, 1997 WL 96563, at *6.
[9] *See* Hoffenberg Response Ex. 1, at 3 ("The post [sic] was thereafter purchased by Murdoch's News Corporation.").
[10] A copy of the Agreement is attached to the Gavenchak Supplemental Declaration ("Gavenchak Supp. Decl.") as Exhibit A.
[11] Gavenchak Supp. Decl., Ex. A, §1.1.
[12] *Id.* Ex. A, § 1.1(d).

3

taken on by NYP Holdings,[13] and indicates the existence of "amounts held in escrow to pay the secured indebtedness owed to Towers Financial Corporation."[14]

The bankruptcy judge approved the sale of the *New York Post* to NYP Holdings, signing an order on September 14, 1993 "Approving and Authorizing the Debtor to enter into an Asset Purchase Agreement with NYP Holdings, Inc. for the Sale of Assets to NYP Free and Clear of all Liens, Claims, Interests and Encumbrances."[15]  A copy of the bankruptcy docket for *Kopa, Inc. f/k/a The New York Post, Inc.*, No. 93-41306-brl (Bankr. S.D.N.Y.), is attached as Exhibit B to the Bayard Declaration.  Consistent with the Agreement and the bankruptcy court's order, on October 1, 1993 New York Post Co. assigned to NYP Holdings all its "right, title and interest in and to" to its registered trademarks, which assignment was duly filed with the USPTO.[16]  Hoffenberg does not and cannot explain how the purported Towers Financial lien would have survived the above-mentioned, judicially approved sale of the assets of *New York Post* to NYP Holdings free and clear of all liens, claims, interests, and encumbrances.

Hoffenberg also refers vaguely to an agreement purportedly between himself and Rupert Murdoch,[17] but he provides no copy of this supposed agreement, and he does not explain how any such agreement transferred trademark rights to him.  Ultimately, Hoffenberg's account boils down to the assertion that he "acquired the name *New York Post Publishing Corporation* [sic]" and "kept the 'New York Post Publishing Corp.' [sic]" after NYP Holdings purchased the newspaper.[18]  But, as demonstrated in NYP Holdings' opening brief, simply creating a corporation name does not create any trademark rights.[19]

---

[13] *Id.* Ex. A, § 1.3(a).
[14] *Id.* Ex. A, § 1.1(k).
[15] Bayard Decl. Ex. B, docket entry 224.
[16] Gavenchak Supp. Decl. Ex. B.
[17] *See, e.g.*, Hoffenberg Response ¶¶ 3, 7, 22, 25, Ex. 1, at 3.
[18] *Id.* Ex. 1, at 3 (Hoffenberg says that "Mr. Hoffenberg was granted a management agreement but there was a hitch Murdoch could not exercises chosen extent of control with Mr. Hoffenberg because Mr. Hoffenberg never wanted to

4

The lack of any corroborating evidence to support Hoffenberg's account is especially troublesome given the good reasons to question his credibility. Not only did Judge Sweet sentence Hoffenberg to twenty years in prison for fraud,[20] but the first line of his unsworn Exhibit 1 contains a demonstrable falsehood. Hoffenberg's Exhibit 1 states: "On Monday, January 25, 1993 Mr. Hoffenberg graced the pages of the *New York Post* newspaper with the headline "Hoffenberg Saves the Post."[21] Exhibit 1 also includes a purported photo of this headline, showing a *New York Post* late-city final cover from January 25, 1993 with the headline "Hoffenberg Saves the Post" in large block letters and in small letters "Our White Knight."[22] That actual cover said "Never Say Die! Last Minute Deal Saves the Post." It did not mention "Hoffenberg" or include "Our White Knight."[23] Hoffenberg's willingness to distort the facts on this simple point calls into question the remaining unsubstantiated and grandiose claims he makes in his response.

In sum, Hoffenberg provides no corroborating evidence to support his claim of ownership of the NEW YORK POST Marks, and he does not explain the logical or legal basis for his assertion of rights. In the face of NYP Holdings' undisputed documentary evidence of ownership, the presumption of validity that attaches to trademark registrations, and the

---

be in this deal there was no leverage so although Mr. Murdoch did receive his treasured right of first refusal in the transfer to Mr. Hoffenberg acquired the name *New York Post Publishing Corporation*, invaluable then and now the source of vision for the future of Towers investors [sic passim]") (emphasis in original); *see also id.* ("These figures persuaded the Federal Communications Commission to grant Mr. Murdoch a permanent waiver from the cross-ownership rules that it forced him to sell the paper five years earlier, however Mister Hoffenberg kept the 'New York Post Publishing Corp.' [sic passim].").

[19] Opening Brief 10-13.
[20] *Hoffenberg*, 1997 WL 96563, at *15-16, Bayard Decl. Ex. A. Judge Sweet ordered a mental assessment of Hoffenberg as recently as December 11, 2013, following his release from prison. Order, *United States v. Hoffenberg*, No. 1:94-CR-00213 (RWS) (S.D.N.Y. Dec. 11, 2013), Bayard Decl. Ex. C. This came after a history of mental illness that "from time to time has limited his ability to perceive reality accurately." *Hoffenberg*, 1997 WL 96563 at * 15, Bayard Decl. Ex. A.
[21] Hoffenberg Response Ex. 1, at 1.
[22] This same purported photo of the January 25, 1993 *New York Post* cover appears on the Infringing Website. *See* Gavenchak Decl. ¶¶ 32-33, Ex. N.
[23] A photo of the January 25, 1993 cover from microfilm in the *New York Post*'s archives is annexed as Exhibit C to the Gavenchak Supplemental Declaration.

incontestable status of seven of the NEW YORK POST Marks, Hoffenberg's conclusory and misleading assertions do not raise a genuine factual dispute regarding ownership of the *Post*'s trademarks.

## II.

## HOFFENBERG'S CLAIM OF TRADEMARK OWNERSHIP ALSO FAILS BECAUSE HE DID NOT USE THE MARKS IN COMMERCE UNTIL SEPTEMBER 2014

Even if Hoffenberg were correct—which he is not—his claim to have acquired some ownership interest in the *New York Post*'s trademarks in 1993 fails because he never used the marks in commerce until September 2014. He does not dispute that New York Post Publishing Inc. did not even exist between March 1995 and June 2014.[24] He does not dispute that Defendants never used the NEW YORK POST mark in commerce until September 2014.[25] Nor does he dispute that NYP Holdings and its predecessors commenced using the NEW YORK POST Marks decades ago and have continued using them in commerce up to the present time.[26] Thus, Hoffenberg owns no valid trademark rights; he would be, in any event, the junior infringing user and any rights he might have ever acquired would have been abandoned long ago through disuse.

As demonstrated in NYP Holdings' opening brief, trademark rights derive from use in commerce, and a trademark owner must demonstrate continuous use in order to maintain its rights.[27] The same basic rule applies when trademark rights are transferred by contract or purchase.[28] For example, in *Reconstruction Finance Corp. v. J.G. Menihan Corp.*,[29] the plaintiff purchased the trademarks, goodwill, and physical assets of a bankrupt shoe company that had

---

[24] Gavenchak Decl. ¶¶ 15, 18, Ex. D.
[25] *Id.* ¶ 40.
[26] *Id*. ¶ 8.
[27] Opening Brief 10.
[28] 3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 18.15 (4th ed. 2014) (trademark rights abandoned if assignee does not use the mark).
[29] 28 F. Supp. 920 (W.D.N.Y. 1939).

6

defaulted on a loan secured by its trademarks.[30] The court held that the plaintiff lost its rights in the trademarks by not using them in commerce and selling the physical assets that would have made it possible to manufacture and sell shoes under the marks in question.[31] The court explained: "A trade-mark is not susceptible of ownership except in connection with an existing business. . . . If there is no business there may be no good-will and nothing to protect by the use of a trade-mark."[32] Cases in other factual contexts likewise conclude that trademark rights derive from "actual use in connection with a particular business."[33] Thus, even if Hoffenberg acquired the trademarks and goodwill of the *New York Post* in 1993—which he most definitely did not—he would have lost those rights by failing to use them in connection with an existing business at that time, and he is now indisputably the junior user of the marks.

Moreover, even if Hoffenberg had acquired rights in 1993, he abandoned those rights long ago through disuse. In *De Beers LV Trademark Ltd. v. DeBeers Diamond Syndicate Inc.*,[34] licensees of the DE BEERS trademark sued a New York diamond seller who formed a Delaware corporation named "DeBeers Diamond Syndicate" in 1981.[35] For fifteen years, the defendant's corporation was "inoperative as a matter of law [because of] its failure to file annual reports and non-payment of taxes."[36] In 2002, the defendant reactivated the corporation and attempted to use the mark DEBEERS to sell diamonds on the Internet and to register the mark with the USPTO.[37] The court held that, even if the defendant had obtained trademark rights in the "DeBeers Diamond Syndicate" name in the 1980s, he "abandoned them through disuse of the

---

[30] *Id*. at 921.
[31] *Id.* at 921-922.
[32] *Id.* at 922.
[33] *See Tecnimed SRL v. Kidz-Med, Inc.*, 763 F. Supp. 2d 395, 403 (S.D.N.Y. 2011) (dispute between manufacturer and distributor); *G's Bottoms Up Social Club v. F.P.M. Indus.*, 574 F. Supp. 1490, 1495 (S.D.N.Y. 1983) (creation of logo by employee who did not operate the business).
[34] 440 F. Supp. 2d 249 (S.D.N.Y. 2006).
[35] *Id*. at 262.
[36] *Id.*
[37] *Id.* at 263.

7

name between 1986 and 2002" when his "corporate entity was inactive."[38] Judge Cote explained that this long period of inactivity "far exceeds the length of time specified by the Act [three years] as prima facie evidence of abandonment," and the defendant could not rebut the presumption of abandonment by "bare assertion" that he "always intended to continue the business when conditions were right."[39] The situation here is indistinguishable.

## III.

## HOFFENBERG'S RESPONSE DOES NOT DISPUTE THE LIKELIHOOD OF CONFUSION OR IRREPARABLE HARM

Far from disputing that likelihood of confusion and irreparable harm will result from Defendants' unlawful activities, Hoffenberg's response embraces the confusion and affirmatively seeks to exacerbate the irreparable harm. Hoffenberg does not claim that his purported trademark can coexist with the NEW YORK POST Marks in the minds of the public. He does not contend that readers will distinguish between the competing marks, nor could he. He does not deny that the reading public will associate his inferior news services with the *New York Post*. Rather, he falsely claims a right to use the NEW YORK POST Marks as his own and to replace the *New York Post* with his own competing business.

Hoffenberg's Exhibit 1 perfectly encapsulates Hoffenberg's broader attempt to sow confusion in the minds of the public and irreparably damage NYP Holdings. He presents the history of the *New York Post* as the history of his own enterprise, repeats his false and misleading claim to own the *Post*'s trademarks, and proclaims his intention to "begin selling newspapers in New York City soon."[40] As in the *De Beers* case, Hoffenberg's "resurrection of the corporate name" after 20 years and his deliberate attempt to "deceive the public and sow confusion"

---

[38] *Id.* at 272-73.
[39] *Id.* at 273.
[40] Hoffenberg Response Ex. 1.

8

demonstrate his bad faith.[41]  And, as in the *De Beers* case, the addition of the word "Publishing" to "New York Post," like the addition of the word "Diamond" to "DeBeers" only exacerbates the confusion, underscoring the identical competing businesses of the veteran user and the infringing newcomer.[42]

Unrebutted evidence thus leaves no question that confusion and irreparable harm are likely to result unless Defendants are enjoined.

### IV.

### HOFFENBERG'S MOTION FOR AN EXTENSION OF TIME ON BEHALF OF THE UNITED STATES ATTORNEY HAS NO BASIS IN LAW OR FACT AND SHOULD BE DENIED

NYP Holdings opposes Hoffenberg's motion seeking an extension of time on behalf of the United States Attorney for three reasons.  First, Hoffenberg has no authority to speak on behalf of the United States Attorney, and the United States Attorney has not indicated an interest in joining this action.  Second, the Mandatory Victims Restitution Act, relied on by Hoffenberg, does not require or even permit the United States Attorney to intervene in civil litigation on the theory that the litigation could impact the ability of a convicted felon to pay restitution.[43]  Third, as set forth above, Hoffenberg has no rights in the *New York Post* or its trademarks, and therefore participation of the United States Attorney would serve no purpose.

### CONCLUSION

For the foregoing reasons and those stated in NYP Holdings' opening brief, NYP Holdings respectfully requests that this Court issue an order enjoining Defendants from infringing the NEW YORK POST Marks and violating the Anticybersquatting Consumer

---

[41] *De Beers LV Trademark Ltd.*, 440 F. Supp. 2d at 278.
[42] *Id.* at 276.
[43] *See* 18 U.S.C. §§ 3663, 3663A, 3664.

Protection Act, including an order disabling Defendants' Infringing Website and ordering the

www.newyorkpostpublishinginc.com domain name transferred to NYP Holdings.

Dated: New York, New York
October 29, 2014

>Respectfully submitted,
>
>DAVIS WRIGHT TREMAINE LLP
>
>By: /s/ Samuel M. Bayard
>　　Laura R. Handman
>　　Samuel M. Bayard
>　　Camille Calman
>
>1633 Broadway, 27th Floor
>New York, New York  10019
>(212) 489-8230
>
>*Attorneys for NYP Holdings, Inc.*